```
 1                    UNITED STATES DISTRICT COURT
                         DISTRICT OF NEW JERSEY
 2
    _____
 3  CECILIA TRIANA,                 :  Docket No. 2:10-cv-03221(PGS)
                                    :
 4        Plaintiff,                :
                                    :
 5     vs.                          :
                                    :
 6  VERIZON, METLIFE, et al.,       :  Newark, New Jersey
                                    :  Tuesday, January 11, 2011
 7        Defendants.               :  1:44 p.m.
    _____
 8                       TRANSCRIPT OF SETTLEMENT
             BEFORE THE HONORABLE ESTHER SALAS, U.S.M.J.
 9

10
    APPEARANCES:
11  FOR THE PLAINTIFF:       GERI LANDAU SQUIRE, ESQ.
                             Court Plaza South
12                           21 Main Street - Suite 154
                             Hackensack, NJ 07601
13

14  FOR DEFENDANT
    VERIZON and METLIFE:     RANDI F. KNEPPER, ESQ.
15                           (McElroy, Deutsch, Mulvaney &
                             Carpenter, LLP)
16                           100 Mulberry Street
                             Newark, NJ 07102
17
    LESLIE K. PONTIER:       ADOLFO L. LOPEZ, ESQ.
18                           (Ledesma, Diaz, Lopez & Noris, PC)
                             412 38th Street
19                           Union City, NJ 07087-4864

20
    Transcription Company:   KLJ TRANSCRIPTION SERVICE, LLC
21                           P.O. BOX 8627
                             SADDLE BROOK, NJ 07663
22                           (201)703-1670 - Fax (201)703-5623

23  Proceedings recorded by electronic sound recording, transcript
    produced by transcription service.
24

25
```

I N D E X

```
                                              Page

TERMS OF SETTLEMENT                              4

MS. TRIANA CONFIRMS SETTLEMENT                  11

MS PONTIER CONFIRMS SETTLEMENT                  13
```

1 (Proceedings begin at 1:44 p.m.)

2 THE COURT: We're on the record in the matter of
3 Triana v Verizon, et al., Civil Action Number 10-3221.

4 Can I have appearances by all counsel please.

5 MS. LANDAU SQUIRE: Good afternoon, Judge. Geri
6 Landau Squire appearing on behalf of Cecilia Triana, who is
7 seated to my right.

8 MR. LOPEZ: Adolfo Lopez, Your Honor, appearing on
9 behalf of Leslie Pontier, a named defendant.

10 MS. KNEPPER: Good afternoon, Your Honor. Randi
11 Knepper on behalf of Verizon Communications, Inc. and
12 Metropolitan Life Insurance Company, with the caveat that the
13 parties have entered into a consent judgment with regard to
14 Metropolitan Life Insurance Company, which will lead to its
15 dismissal, which is going to be submitted to Judge Sheridan.

16 THE COURT: Very well.

17 Thank you very much to all counsel. You may be
18 seated.

19 We commenced with settlement negotiations at about
20 10:15 this morning. I'm pleased to announce at 1:44 that we do
21 have a settlement and an amicable resolution has been reached
22 in this matter.

23 Who's going to be laying out in general terms the
24 settlement please?

25 MR. LOPEZ: I will, Your Honor.

1        THE COURT: All right. Go ahead, Mr. Lopez.

2        MR. LOPEZ: Thank you, Your Honor.

3        Your Honor, the parties, as you're aware, have reached
4 a settlement. The underlying issues here are the two basic
5 assets, one being certain pension benefits arising from a
6 former employee of Verizon, John M. Noone. He is -- he had a
7 pension available to him, which we estimate or we have figures
8 as of February 1st, 2011, with a value of $501,012. The other
9 asset is the value of a life insurance policy, which was also
10 available to Mr. Noone as a result of his employment with
11 Verizon, the value of that asset is $107,000.

12       The parties have agreed to a distribution of these
13 assets. And by way of background, just for the record, the
14 plaintiff is the former spouse of Mr. Noone. They were
15 divorced approximately one month prior to his death. As a
16 result of that divorce, there was an underlying property
17 settlement agreement, which gave rise to certain benefits, or
18 so is the claim, for a portion of those -- of the pension
19 proceeds. And those were established through a state court
20 action in the matrimonial matter.

21       The additional -- the claim also arises as a result of
22 that property settlement agreement as to the life insurance
23 policy, where the plaintiff is making a claim to -- to those
24 proceeds because the property settlement agreement required a
25 policy of life insurance to be held for the benefit of -- of

1  the plaintiff here to secure certain alimony that was to be
2  paid to her.
3          And to that end, the parties -- my client was the
4  named beneficiary under those policy -- under both the policy
5  and the pension program, and they each have disputed claims as
6  to the overall assets.
7          The settlement, as reached by the parties, calls for
8  the value of the pension to be ascertained, each side will
9  value the pension and we certainly believe that these values
10 will not differ greatly, but we'll deal with that and -- and
11 there is an agreement that the plaintiff is entitled to 50
12 percent of the -- of whatever the value determines was the
13 marital coverture portion, which was at 50 percent pursuant to
14 the property settlement agreement.
15         Also for the record, a QDRO was required.  We were
16 advised by Miss Knepper that because it is a settlement, that
17 that aspect will not be -- will not have to be finalized in
18 state court.
19         As to the life insurance policy, the parties have
20 agreed to a 50/50 split on the $107,000, with one caveat in
21 that regard.  The defendant, my client, is agreeing to these
22 figures based upon certain representations that have been made
23 by the plaintiff to indicate that the total value of the estate
24 of the decedent, John Noone, do not exceed $45,000.
25         And the reason that is important, again, just for the

1  record, is that the property settlement agreement reached by

2  the parties contemplated a -- a lien on the estate of the

3  decedent in the event that no life insurance policy was

4  obtained him to secure the alimony payments.  So, that lien,

5  which is existent, obviously, as to the estate, could,

6  theoretically, be satisfied from proceeds of the estate and we

7  don't know the overall balance.  So this settlement is based on

8  the presumption --

9           THE COURT:  Well, let me interrupt you, Mr. Lopez.  I

10 understand, and, again, I leave it to the parties to -- to make

11 and provide each other the necessary information with respect

12 to the value of the estate, but the lien that we are speaking

13 of was $168,000.  That's what the plaintiff was entitled to

14 under -- under the agreement as it relates to alimony over a

15 seven-year period.

16          Correct, Counsel?

17          MS. LANDAU SQUIRE:  Yes, Your Honor.

18          MR. LOPEZ:  And, Your Honor, there is no dispute --

19          THE COURT:  Okay.

20          MR. LOPEZ:  -- as to the figure.

21          THE COURT:  All right.

22          MR. LOPEZ:  So, yes, the --

23          THE COURT:  Just so if we have a situation where if

24 the estate is 46, 5 or 50, we all recognize that even assuming

25 that amount, plus what the settlement proceeds are with respect

1  to the life insurance, we're nowhere near that 168 threshold,
2  correct?
3          MR. LOPEZ: That is correct, Your Honor.
4          THE COURT: Okay.
5          MR. LOPEZ: And it will -- under the circumstances is
6  that it will not be an impediment, but we are proceeding on
7  faith; and, unfortunately, my malpractice carrier is not very
8  happy when we do things on faith. So, I need to protect my
9  client.
10          THE COURT: Correct.
11          MR. LOPEZ: And that's part of my duty as an attorney
12  to do so, but, yes, there is an understanding that we're not
13  talking about minuscule, immaterial figures. It would
14  certainly have to be something substantial.
15          THE COURT: Okay.
16          MR. LOPEZ: And this settlement is not held up by a
17  finalization of the estate. We're agreeing that we can -- we
18  can wrap up our settlement, we can disburse the proceeds, and
19  once the -- once the estate is finalized, an accounting -- a
20  copy of the accounting can be provided. I also mentioned to
21  Miss Squire that we can file a caveat in Middlesex County and
22  that way we are noticed. And I don't know, we haven't made a
23  final decision as to how to proceed, but certainly the record
24  will speak as to what the intent of the parties is. And, it's
25  clear that my client is not looking to set aside this

1 settlement, if we find another $5,000 somewhere. It would
2 certainly have to be something substantial, which would
3 materially alter the terms of the settlement.
4     THE COURT: Thank you, Mr. Lopez.
5     Yes, Miss Landau Squire.
6     MS. LANDAU SQUIRE: Judge, I would just like to also
7 add to that that I've communicated with my client, there is not
8 an attorney who is representing her now with respect to her
9 role as the administratrix of the estate; however, over the
10 next week or so, I will be going with her to an estate attorney
11 so that when we provide that information to Mr. Lopez that will
12 be on the letterhead from an estate attorney whose reviewed the
13 documents to give him a number as to what the value is of the
14 estate. And, I'm assuming there will be a final accounting at
15 some subsequent time. I have no objection to him filing a
16 caveat to receive the information as to the final accounting.
17     THE COURT: Okay. And with -- before I let Miss
18 Knepper place something on the record, I want to confirm that
19 you have heard Mr. Lopez and you agree with his recitation of
20 the general terms of the settlement agreement?
21     MS. LANDAU SQUIRE: I do, Your Honor.
22     THE COURT: All right.
23     MS. LANDAU SQUIRE: Thank you.
24     THE COURT: Thank you very much, Counsel.
25     Miss Knepper.

1    MS. KNEPPER: Yes, Your Honor. With respect to
2 Verizon, it's our position that no QDRO has ever been
3 established. We are not paying any money to Miss Triana
4 directly. Any money going to Miss Triana is going from Miss
5 Pontier to Miss Triana. So Verizon will be paying all money to
6 Miss Pontier through her attorney's trust account and Miss
7 Triana will be signing a release releasing her claim to the
8 pension benefits to allow for this to happen.
9    THE COURT: Counsel, we understand how the -- the
10 actual settlement will operate with respect to the payment by
11 Verizon. Any objections to what has been placed on the record
12 by Miss Knepper?
13    MS. LANDAU SQUIRE: No. And I've communicated with
14 Miss Knepper and she will be preparing the release for my
15 client's signature, which I'm certain will be acceptable. And
16 as soon as I receive that and when we have all this worked out,
17 my client will execute that I'll return it to Miss Knepper.
18    THE COURT: Do we have an idea of how long this will
19 all take? Will a 60-day order, should His Honor sign a 60-day
20 order, be enough time for us to get all the paperwork
21 transferred, as well as any of the information that needs to be
22 provided pursuant to the settlement?
23    MR. LOPEZ: Your Honor, based upon what Miss Knepper
24 has indicated to us, the preliminary point is that release,
25 which frees up the funds, and apparently Randi --

1    MS. KNEPPER: We should be able to finish it within 60
2 days, Your Honor.
3    THE COURT: All right. If not, then you all know that
4 you can come back before -- or petition Judge Sheridan to
5 extend that order, and I strongly suggest you do, since this
6 Court will lose jurisdiction post the date on that 60-day
7 order.
8    But let me, if I may, speak directly to Miss Triana,
9 with your permission, Miss Landau.
10    MS. LANDAU SQUIRE: She wants to speak to you
11 directly.
12    I'm sorry, did you want to speak -- oh, no. I just
13 wanted to --
14    (Ms. Landau Squire conferring with Ms. Triana)
15    MS. LANDAU SQUIRE: I'm sorry.
16    THE COURT: I just want to ask some questions --
17    MS. LANDAU SQUIRE: Certainly.
18    THE COURT: -- about whether she's participated in the
19 settlement here today and she's had an opportunity to
20 understand what's been laid out. At any point in time, if
21 there's a question, we want to take a break or a pause for a
22 moment, that's -- that's quite all right. And I'm going to
23 have questions for both sides. Okay?
24    Miss Triana, good afternoon, ma'am.
25    MS. TRIANA: Good afternoon, Your Honor.

1    THE COURT: We had an opportunity to sit down in
2 chambers during the course of today's settlement negotiations,
3 and one thing I -- I want to make sure you understand are those
4 terms and conditions that were laid out by Mr. Lopez, do you
5 have a general understanding with, of course, your counsel's
6 assistance, as to the terms and conditions of the settlement?
7    MS. TRIANA: Yes, I do.
8    THE COURT: And you've been represented by Miss Landau
9 Squire for some time now, correct?
10    MS. TRIANA: Yes.
11    THE COURT: And throughout the course of her
12 representation she's answered any and all of your questions,
13 correct?
14    MS. TRIANA: Yes.
15    THE COURT: Are you happy with the representation that
16 she's provided you?
17    MS. TRIANA: Yes.
18    THE COURT: Do you think you need any additional time
19 to consider the terms and conditions of the settlement that we
20 reached today?
21    MS. TRIANA: No.
22    THE COURT: Okay. Has anyone forced or coerced you
23 into settling today?
24    MS. TRIANA: No.
25    THE COURT: You understand by settling, the case is

1 deemed closed, terminated? I'm only going to allow the parties
2 about 60 days, or 90, should they need some additional time, to
3 finalize the terms of the conditions, but there will be no
4 trial, not today, not tomorrow, not ever. Do you understand
5 that?
6     MS. TRIANA: Yes, I do.
7     THE COURT: And, again, you understand the general
8 terms and conditions of the settlement?
9     MS. TRIANA: Yes.
10     THE COURT: All right. Are there any questions that
11 you have for either the Court or for counsel?
12     MS. TRIANA: No.
13     THE COURT: And if you did have a question, you know
14 I'd stop, we'd break, I'd take another matter that I have and
15 come back. So, I don't want anyone, that goes for both sides,
16 to -- to feel like they need to do this now. I'll give you the
17 time you need.
18     Are you comfortable moving forward with the settlement
19 at this point?
20     MS. TRIANA: Yes, I am.
21     THE COURT: Okay. Mr. Lopez, with permission, may I
22 speak to your client?
23     MR. LOPEZ: Of course, Your Honor. Of course.
24     THE COURT: Miss Pontier, same questions for you. We
25 had -- we met today and conferenced, first we met together,

1   then we separated.  Do you have any questions or concerns

2   regarding this settlement that's been outlined by Mr. Lopez

3   moments ago?

4           MS. PONTIER:  No, Your Honor.

5           THE COURT:  And you've been represented by Mr. Lopez

6   throughout the course of defending you in this action, correct?

7           MS. PONTIER:  Yes.

8           THE COURT:  And you've had an opportunity to ask him,

9   and I in fact walked out of the room and I let you ask and

10  conference this matter by yourself with, of course, your mom,

11  who is present here today, are you happy with Mr. Lopez's

12  representation?

13          MS. PONTIER:  Yes, I am.

14          THE COURT:  Do you need any time to talk to him about

15  the terms and conditions?

16          MS. PONTIER:  Yes.

17          THE COURT:  Anyone forcing or coercing you into

18  entering a settlement here today?

19          MS. PONTIER:  No.

20          THE COURT:  And you understand that that closes the

21  case, right?  We're done.  The only thing we've got to do is

22  let the lawyers be lawyers, work out the paperwork and finalize

23  the paperwork.  You understand that?

24          MS. PONTIER:  Yes.

25          THE COURT:  And you want to move forward with today's

1  settlement?

2      MS. PONTIER: Yes, I do.

3      THE COURT: All right. Are there any questions that I
4  didn't ask either the defendant or the plaintiff in this case
5  that either side believes is necessary?

6      MR. LOPEZ: No, Your Honor.

7      THE COURT: All right.

8      MS. LANDAU SQUIRE: No, Your Honor. Thank you.

9      THE COURT: All right. Well, I just want to say on
10 behalf of the District of New Jersey that I thank counsel, all
11 counsel, their representatives for getting this settlement
12 reached today. It wouldn't have happened without everybody
13 being -- at least negotiating in good faith and compromising.
14 So, I thank you all for your time.

15     MS. LANDAU SQUIRE: Thank you, Your Honor, for your
16 time. You were very instrumental in assisting us.

17     THE COURT: All right. A 60-day order will issue.

18     MS. KNEPPER: Thank you.

19     THE COURT: Thank you so much.

20        (Proceedings concluded at 1:57 p.m.)

21                    CERTIFICATION
        I, Lisa Mullen, certify that the foregoing is a
22 correct transcript from the electronic sound recording of the
   proceedings in the above-entitled matter.
23
   01/12/12                          **S / Lisa Mullen**
24 Date                               Lisa A. Mullen
                                      KLJ Transcription Service
25